# No. 14-2145

# United States Court of Appeals
# for the Fourth Circuit

L. HALL,

*Plaintiff – Appellant,*

*v.*

GREYSTAR MANAGEMENT SERVICES, L.P., d/b/a Greystar
Development and Construction, LP, d/b/a Versailles Apartment Homes;
PSN LANDSCAPING COMPANY, INCORPORATED; and RICHARD KELLY

*Defendants – Appellees.*

*On Appeal from the United States District Court for the District of Maryland
at Baltimore in No. 1:13-cv-03615-JKB (Hon. James K. Bredar, Judge)*

# BRIEF FOR PLAINTIFF-APPELLANT

LESLIE R. STELLMAN
ADAM E. KONSTAS
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road
Towson, MD 21204
(410) 938-8800
lstellman@pklaw.com
akonstas@pklaw.com
Counsel for Appellant

DECEMBER 29, 2014

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. 14-2145    Caption: L. Hall v. Greystar Management Services, L.P.; PSN Landscaping
Company, Inc.; and Richard Kelly.

Pursuant to FRAP 26.1 and Local Rule 26.1,
L. Hall who is  Appellant          , makes the following disclosure:
 (name of party/amicus)        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?
            ( ) YES                    ( X ) NO
2.    Does party/amicus have any parent corporations?
            ( )    YES                 ( X ) NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?
            ( ) YES                    ( X ) NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a
      direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
            ( ) YES                    ( X ) NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association (amici curiae do not complete this question)?
            ( ) YES                    ( X ) NO
      If yes, identify any publicly held member whose stock or equity value could be
      affected substantially by the outcome of the proceeding or whose claims the trade
      association is pursuing in a representative capacity, or state that there is no such
      member:

6.    Does this case arise out of a bankruptcy proceeding?
            ( ) YES                    ( X ) NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date:  December 29, 2014
            Counsel for Appellant

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

I.   JURISDICTIONAL STATEMENT ............................................1

II.  STATEMENT OF THE ISSUES ................................................1

III. STATEMENT OF THE CASE ...................................................2

IV.  STATEMENT OF THE FACTS .................................................3

V.   SUMMARY OF THE ARGUMENT ...........................................7

VI.  ARGUMENT...........................................................................9

    A.   STANDARD OF REVIEW ................................................9

    B.   THE DISTRICT COURT ABUSED ITS DISCRETION BY
        FINDING HALL'S FHA RETALIATION CLAIM IN HER
        PROPOSED AMENDED COMPLAINT TO BE FUTILE...............11

    C.   THE DISTRICT COURT ERRED BY DISMISSING
        HALL'S CONVERSION CLAIM IN HER PROPOSED
        AMENDED COMPLAINT....................................................20

    D.   THE DISTRICT COURT ABUSED ITS DISCRETION BY
        REFUSING TO CERTIFY THE QUESTION OF THE
        PROPER INTERPRETATION OF THE BALTIMORE
        COUNTY CODE SECTION 35-3-103................................27

VII. CONCLUSION........................................................................33

REQUEST FOR ORAL ARGUMENT .................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alley v. Les Chateaux Condo. Ass'n, Inc.*,
　8:10-CV-760-T-33TGW, 2010 WL 4739508
　(M.D. Fla. Nov. 16, 2010) ...............................................................14

*Anderson v. United States*,
　669 F.3d 161 (4th Cir. 2012) ....................................................29, 30

*Antonio v. SSA Sec., Inc.*,
　749 F.3d 227 (4th Cir. 2014) ..............................................29, 30, 31

*Arizonans for Official English v. Arizona*,
　520 U.S. 43 (1997)...........................................................................29

*Bala v. Commonwealth of Virginia Dept. of Conservation and Recreation*,
　532 Fed. Appx. 332 (4th Cir. 2013) .................................................16

*Bass v. E.I. Dupont de Nemours & Co.*,
　324 F.3d 761 (4th Cir. 2003) ...........................................................16

*Bloch v. Frischholz*,
　587 F.3d 771 (7th Cir. 2009) ...........................................................17

*Bohle v. Thompson*,
　78 Md. App. 614, 554 A.2d 818 (1989) ...........................................26

*Bost v. State*,
　406 Md. 341, 958 A.2d 356 (2008) ..................................................31

*Chao v. Rivendell Woods, Inc.*,
　415 F.3d 342 (4th Cir. 2005) ...........................................................17

*Checkpoint Foreign Car Serv., Inc. v. Sweeney*,
　250 Md. 251, 242 A.2d 148 (1968) ............................................22, 25

*Cockerham ex rel. Cockerham v. Stokes County Bd. of Educ.*,
　302 F. Supp. 2d 495 (M.D.N.C 2004) ..............................................16

*Cooke v. Town of Colorado City, Ariz.*,
　934 F. Supp. 2d 1097 (D. Ariz. 2013) ..............................................17

*Copier by & through Lindsey v. Smith & Wesson Corp.*,
　138 F.3d 833 (10th Cir. 1998) .........................................................29

*Craddock v. Lincoln Nat. Life Ins. Co.*,
   533 Fed. Appx. 333 (4th Cir. 2013) ............................................16

*Darcars Motors of Silver Spring, Inc. v. Borzym,*
   379 Md. 249, 841 A.2d 828 (2004) ..............................................22

*Davis v. Piper Aircraft Corp.,*
   615 F.2d 606 (4th Cir. 1980) ...........................................10, 11, 14

*Enhance-It, L.L.C. v. Am. Access Technologies, Inc.*,
   413 F. Supp. 2d 626 (D.S.C. 2006) ..............................................10

*First Am. Title Ins. Co. v. W. Sur. Co.,*
   447 F. App'x 437 (4th Cir. 2011), *certified question answered*,
   283 Va. 389, 722 S.E.2d 637 (2012) .......................................29-30

*Fletcher v. Tidewater Builders Ass'n Inc.*,
   216 F.R.D. 584 (E.D. Va. 2003) .................................................15

*Galustian v. Peter,*
   591 F.3d 724 (4th Cir. 2010) .....................................................9

*Grattan v. Bd. of Sch. Commissioners of Baltimore City,*
   805 F.2d 1160 (4th Cir. 1986) ...................................................28

*Guido, et al. v. Hudson Transit Lines*,
   178 F.2d 740 (3d Cir. 1950) ......................................................24

*IFCO Sys. N. Am., Inc. v. Am. Home Assur. Co.*,
   502 F. App'x 342 (4th Cir. 2013)................................................29

*Johns v. Stillwell*,
   No. 3:07-CV-00063, 2009 WL 1408517 (W.D. Va. 2009)....................12, 17

*Johnson v. Oroweat Foods Co.,*
   785 F.2d 503 (4th Cir. 1986) ....................................................10

*Kaplan v. Bach,*
   36 Md. App. 152, 373 A.2d 71 (1977) .........................................23

*Keys v. Chrysler Credit Corp.,*
   303 Md. 397, 494 A.2d 200 (1985) .............................................22

*Kolb v. ACRA Control, Ltd.*,
   No. CIV. PWG-12-2782, 2014 WL 2048049
   (D. Md. May 16, 2014)............................................................11

iii

*Laber v. Harvey*,
  438 F.3d 404 (4th Cir. 2009) ...................................................9, 10

*Lehman Bros. v. Schein*,
  416 U.S. 386, 94 S. Ct. 1741, 40 L. Ed. 2d 215 (1974) ...............................29

*Lutz v. State*,
  167 Md. 12, 172 A. 354 (1934) ....................................................31

*Matarese v. Archstone Pentagon City*,
  795 F. Supp. 2d 402 (E.D. Va. 2011) ...........................................11

*Matrix Capital Management Fund, LP v. BearingPoint, Inc.*,
  576 F.3d 172 (4th Cir. 2009) .......................................................10

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973).................................................................15, 16

*Miller v. Carolinas Healthcare Sys.*,
  561 Fed. Appx. 239 (4th Cir. 2014) ...........................................16

*MTB Servs., Inv. v. Tuckman-Barbee Constr. Co.*,
  No. CIV. RDB-12-2109, 2013 WL 1819944 (D. Md. Apr. 30, 2013)..........11

*Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*,
  148 F.3d 396 (4th Cir. 1998) ........................................................9

*People Helpers Foundation, Inc. v. City of Richmond*,
  781 F. Supp. 1132 (E.D. Va. 1992) .......................................18, 19

*People Helpers, Inc. v. City of Richmond*,
  789 F. Supp. 725 (E.D. Va. 1992) ................................................12

*Pittman v. Cole*,
  267 F.3d 1269 (11th Cir. 2001) ....................................................29

*Potomac Conference Corp. of Seventh-day Adventists v.
Takoma Acad. Alumni Ass'n, Inc.*,
  No. CIV.A. DKC 13-1128, 2014 WL 856653 (D. Md. Mar. 4, 2014) ...22, 26

*Price v. Thompson*,
  380 F.3d 209 (4th Cir. 2004), *rev'd on other grounds*,
  468 Fed. Appx. 283 (4th Cir. 2012) ....................................... 11-12

*Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*,
  872 F.2d 75 (4th Cir. 1989) ..........................................................9

iv

*Rambus, Inc. v. Infineon Technologies, AG*,
    304 F. Supp. 2d 812 (E.D. Va. 2004) ............................................................10

*Ring v. First Interstate Mortg., Inc.*,
    984 F.2d 924 (8th Cir. 1993) ........................................................................15

*Robinson v. GEO Licensing Co., L.L.C.*,
    173 F. Supp. 2d 419 (D. Md. 2001) ..............................................................10

*Sackman v. Balfour Beatty Communities, LLC*,
    No. CIV. 113-066, 2014 WL 4415938 (S.D. Ga. Sept. 8, 2014) .................17

*Salve Regina College v. Russell*,
    499 U.S. 225 (1991) ...............................................................................8, 11

*Samuels v. Agency Ins. Co. of Maryland, Inc.*,
    215 F.3d 1321 (4th Cir. 2000) ........................................................................9

*Scott v. Family Dollar Stores, Inc.*,
    733 F.3d 105 (4th Cir. 2013) ..........................................................................9

*Signal v. Gonzales*,
    430 F. Supp. 2d 528 (D.S.C. 2006) ..............................................................16

*Sims v. Carrington Mortgage Servs., L.L.C.*,
    440 S.W.3d 10 (Tex. 2014) ...........................................................................30

*Sims v. Carrington Mortgage Servs., L.L.C.*,
    538 F. App'x 537 (5th Cir. 2013), *certified question accepted*
    (Aug. 23, 2013), *certified question answered sub nom. reh'g denied*
    (Oct. 3, 2014) ...............................................................................................30

*Smith v. Housing Authority of South Bend*,
    867 F. Supp. 2d 1004 (N.D. Ind. 2012) .....................................12, 14, 17, 18

*Staub v. Staub*,
    37 Md. App. 141, 376 A.2d 1129 (1977) ......................................................23

*Stirling v. Garritee*,
    18 Md. 468 (1862) .........................................................................................26

*Suter v. Stuckey*,
    402 Md. 211, 935 A.2d 731 (2007) ...............................................................31

*Swierkiewicz v. Sorema, N.A.*,
    534 U.S. 506 (2002) .........................................................................15, 16, 17

*Trafficante v. Metropolitan Life Ins. Co.*,
409 U.S. 205 (1972)..................................................................................12

*Travel Comm., Inc. v. Pan Am. World Airways, Inc.*,
91 Md. App. 123, 603 A.2d 1301 (1992) .......................................22

*Weishaar v. Canestrale*,
241 Md. 676, 217 A.2d 525 (1966) .......................................23, 24

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ..........................................................................................1

42 U.S.C. § 3601 ..........................................................................................1

42 U.S.C. § 3617 ..........................................................................1, 2, 11, 12

Fed. R. Civ. P. 8 ...........................................................................................7

Fed. R. Civ. P. 8(a) ..........................................................................15, 16, 19

Fed. R. Civ. P. 12(b)(6) ...................................................................14, 19

Fed. R. Civ. P. 15(a)(2) ..........................................................................10

Fed. R. Civ. P. 59(e) .................................................................................9

Baltimore County Code § 35-3-103........................................................*passim*

Md. Code Ann., Cts. & Jud. Proc. § 12-603 ...................................28, 30

# I.    JURISDICTIONAL STATEMENT

Appellant, L. Hall ("Hall"), filed suit in the United States District Court for the District of Maryland (the "District Court") against Greystar Management Services, L.P. ("Greystar"), PSN Landscaping Co., Inc. ("PSN") and Lieutenant Richard Kelly ("Kelly") (collectively the "Appellees") alleging retaliation in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3617, conversion, and a violation of Title 20 of the State Government Article of the Annotated Code of Maryland ("Title 20").  The District Court's jurisdiction derives from the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*  Hall filed a timely notice of appeal on October 22, 2014.  The appellate jurisdiction of this Court is based on 28 U.S.C. § 1291.  This appeal is from a final order that disposes of all of Hall's claims.

# II.    STATEMENT OF THE ISSUES

1. Whether the District Court abused its discretion in finding Hall's proposed Amended Complaint futile because it failed to state a plausible claim for retaliation in violation of the Fair Housing Act.

2. Whether the District Court abused its discretion by dismissing Hall's remaining State law claims, given its findings with respect to her non-abandoned property.

3. Whether the District Court misinterpreted the Baltimore County Code provision governing the status of tenant property during an eviction.

## III.   STATEMENT OF THE CASE

Hall filed an initial complaint on November 27, 2013 against Greystar, PSN, and Kelly alleging retaliation in violation of the "FHA", 42 U.S.C. § 3617, conversion, and a violation of Title 20. *See* Joint Appendix ("J.A.") at 8.[1]  Greystar and Kelly each filed a motion to dismiss, and PSN filed a motion for summary judgment, which the District Court treated as a motion to dismiss. *See id*. at 22, 101, 153. On July 2, 2014, the District Court issued its Memorandum Opinion and Order granting Appellees' motions to dismiss, finding that Hall's property became abandoned by operation of Section 35-3-103 of the Baltimore County Code, and thus, Appellees' disposal of Hall's property did not constitute an adverse action against her under the FHA. *See id*. at 181, 195.

Hall filed a Motion to Alter/Amend Judgment and for Leave to File an Amended Complaint on July 30, 2014, in which she argued that certain portions of her property removed by Appellees were not abandoned within the meaning of the Baltimore County Code, and that her proposed Amended Complaint was not futile. *See id*. at 196. On September 30, 2014, the District Court denied Hall's Motion to Alter/Amend Judgment. *See id*. at 260-269.  Although the Court found that a portion of Hall's property had not been abandoned and thus her proposed

---

[1] All citations to the Joint Appendix refer to the page numbers in the Joint Appendix as a whole.  The Table of Contents in the Joint Appendix provides the first page for each document, and subsequent pages in each document are individually numbered.

2

Amended Complaint would have survived dismissal for this reason, the Court ultimately held that Hall's proposed Amended Complaint insufficiently alleged a causal connection between her protected activity and the adverse action and that she failed to adequately allege damages with respect to her state law claims. *See id*. at 260.

This Appeal ensued, upon which Hall challenges both the District Court's initial and later rulings by dismissing her original Complaint and then denying her Motion to Alter/Amend Judgment and for Leave to File an Amended Complaint. *See id*. at 270.

## IV.  STATEMENT OF THE FACTS

In 2005 Hall, whose documented disabilities include post-polio syndrome and post-traumatic stress disorder ("PTSD"), moved into a ground-floor apartment at the Versailles complex in Towson, Maryland, presented appropriate medical documentation, and requested and was granted accommodation in the form of permission to retain her service dog together with access to a storage space necessary for the retention of materials related to her service dog. *See id*. at 10. In 2009 these accommodations were made part of a settlement agreement between Hall and the subsequent owner of the Versailles complex and were incorporated into Hall's lease. *See id*. at 10-11.

In 2010, following its acquisition of the Versailles complex, Greystar informed Hall that her use of the storage space constituted a violation of the fire code, refused to discuss Hall's proposed alterations to the space created by an engineering firm and approved by the Baltimore County Fire Marshal; refused to entertain further discussion of either of two alternate proposals as would provide the necessary accommodation; and informed Hall that it would not renew her year-to-year lease and that she would be required to vacate the apartment. *See id*. at 11.

In 2011 Hall filed a complaint with the United States Department of Housing and Urban Development ("HUD"); initiated a search for an accessible residence; and, in anticipation of the contingency that the landlord would prevail, engaged a professional moving company (Von Paris/United Van Lines) who confirmed December 6 and 7, 2011 as the first available dates for the removal and relocation of her property. *See id*. at 11-12.

Greystar then prosecuted a tenant holding over action in the Circuit Court for Baltimore County and obtained a warrant of restitution. *See id*. at 12. In advance of December 1, 2011, citing to the move-out dates already established on the record, Hall remitted in full and Greystar accepted and cashed the rental check for the entire month of December, 2011. *See id*. at 13.

Despite Hall's efforts to secure the apartment through the end of December, on December 1, 2011 all of the Appellees were collectively involved with evicting

Hall from her apartment. *See id*. In the process the Appellees not only removed furnishings, fixtures and personal effects from inside the apartment, but also removed personal effects including, but not limited to Hall's purse, U.S. Passport, computers, external hard drives, files, suitcases, and other items from inside and around her vehicle, the vehicle of her housekeeper, as well as the vehicle of her attorney. *See id*. at 14. Hall's purse, U.S. Passport and computers were the only items returned to her through the intervention of two Deputy Sheriffs accompanying Appellee Kelly, a Deputy Sheriff of Baltimore County. *See id*. Thousands of irreplaceable business, personal, and other documents were removed, including letters of recommendation from two (2) U.S. presidents and proof of her educational background and business acumen. The cost to the Appellant of losing these documents was incalculable, and has effectively prevented her from earning a living or serving on corporate boards in accordance with her pre-eviction lifestyle. *See id*. at 12.

Hall's attorney, who was present on-site throughout the proceedings, informed all present that Hall wanted to retain *all* of her property and that arrangements had been made to transport the property to a portable storage unit within one mile of the apartment later in the day. *See id*. at 13. Assisted by the two Deputy Sheriffs who had rescued and returned Hall's purse, U.S. Passport, and two computers, Hall's attorney then negotiated an agreement by which for the sum

5

of $600 in the form of a cashier's check Appellee PSN Landscaping would perform the transport service to the nearby portable storage unit. *See id*.

However, when Hall produced the $600 cashiers check an attorney for Appellee Greystar who was also present on-site throughout the eviction proceedings informed Hall that the agreement to transport her property to a designated storage unit was terminated with the result that approximately the 15,000 pounds of Hall's property already loaded onto PSN Landscaping trucks was immediately removed from the Versailles premises. *See id*. at 13-14.

Earlier in the day on December 1, 2011, Deputy Kelly had informed Hall that PSN Landscaping was transporting her property to Northern Landfill located in Westminster, Maryland. *See id*. at 14. However, when Hall contacted the site she learned that no such arrangements had been made and that if the consignment appeared it would be refused. *See id*. Hall then requested and received electronic confirmation which she immediately relayed to her attorney, and when the $600 transport agreement was terminated and the trucks containing her property removed from in and around her vehicle as well as her housekeeper's and her attorney's vehicles left the Versailles complex, Hall immediately contacted the Maryland State Police, which immediately issued an APB and put Hall in touch with the Baltimore County Police Department. *See id*.

On December 2, 2011, Hall and her attorney were advised by a Baltimore County Police Officer that approximately one third, or five thousand pounds, of her property had been delivered to Roll Off Express in Finksburg, Maryland at 6:17 a.m. with explicit instructions to immediately transport the consignment across the state line to Chambersburg, Pennsylvania and to destroy same before 10:00 a.m. *See id*. at 15. The remaining two thirds, or approximately ten thousand pounds of Hall's property, remains unaccounted for. *See id*.

## V.    SUMMARY OF THE ARGUMENT

The District Court erred by finding that Hall's FHA retaliation claim in her proposed Amended Complaint was "futile" because her allegations are sufficient to survive a motion to dismiss. In light of the pleading standard of Fed R. Civ. P. 8, Hall has alleged sufficient circumstantial evidence to raise a reasonable inference that the Appellees' removal and ultimate destruction of her property was motivated by a discriminatory animus pertaining to Hall's well known disability status and the years-long exercise of her rights under the FHA.

The allegations in Hall's proposed Amended Complaint surrounding Hall's state court claims are sufficient to survive dismissal, and thus the District Court erred in finding her conversion claim futile. Once the District Court was compelled to concede that papers and effects surrounding the vehicles in front of Appellant's apartment that were hauled off and destroyed did not constitute

abandoned property – thus, accepting the notion of an adverse action taken against the Appellant – the District Court clearly erred by concluding that Hall nonetheless failed to plead a viable FHA retaliation claim. To the contrary, Hall has pled all the necessary elements of such a claim, including: (1) that she suffers from a disability; (2) that she engaged in a protected act under the FHA; (3) that Greystar was aware both of her disability and her prior protected activity; (4) that an adverse action was taken against her by Greystar; and (5) that such adverse action reasonably resulted from and was causally connected to her protected activity. Moreover, the District Court's dismissal of the Amended Complaint on the basis that insufficient damages were pled was the height of reversible error.

Finally, the District Court erred in misinterpreting the Baltimore County Code provision governing the disposition of property during a tenant eviction. This Court, of course, is obligated to engage in a *de novo* review of the District Court's interpretation of state or local law. *Salve Regina College v. Russell,* 499 U.S. 225, 231 (1991). At the very least, given the unique, confusing, and contradictory language contained in the law in question, the District Court should have certified the question of its interpretation to the Maryland Court of Appeals.

## VI.   ARGUMENT

### A. STANDARD OF REVIEW

A District Court's denial of leave to amend is reviewed for abuse of discretion. *See Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 112 (4th Cir. 2013); s*ee also Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2009).   It is this Court's "'policy to liberally allow amendment in keeping with the spirit of the Federal Rules of Civil Procedure 15(a).'"   *Scott*, 733 F.3d at 112. (citing *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)).   "A district court abuses its discretion 'by resting its decision on a clearly erroneous finding of a material fact, or by misapprehending the law with respect to underlying issues in litigation.'" *Id.* (citing *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989)).

Under Fed R. Civ. P. 59(e), "there are three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *see also Samuels v. Agency Ins. Co. of Maryland, Inc.*, 215 F.3d 1321 (4th Cir. 2000) (reviewing the denial of a motion for reconsideration for abuse of discretion on the basis of whether the movant demonstrated an error of law or presented new grounds in support of his position).

Fed. R. Civ. P. 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "[A] post-judgment motion to amend is evaluated under the same legal standard' – grounded in Rule 15(a) – 'as a similar motion filed before judgment was entered.'" *Matrix Capital Management Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (citing *Laber*, 438 F.3d at 428). The Fourth Circuit "reads Rule 15(a) to mean that leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Id.*

"For a motion to amend to be denied for futility, the amendment must be 'clearly insufficient or frivolous on its face.'" *Enhance-It, L.L.C. v. Am. Access Technologies, Inc.*, 413 F. Supp. 2d 626, 629 (D.S.C. 2006) (citing *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510-11 (4th Cir.1986)); *see also, Rambus, Inc. v. Infineon Technologies, AG,* 304 F.Supp.2d 812, 819 (E.D.Va.2004) ("Courts generally favor the 'resolution of cases on their merits' ... [t]hus the substantive merits of a proposed claim [or defense] are typically best left for later resolution, e.g., motions to dismiss or for summary judgment, ..., or for resolution at trial.") (quoting *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir.1980)); *see also Robinson v. GEO Licensing Co., L.L.C.,* 173 F.Supp.2d 419, 423 (D.Md.2001).

"Determining whether amendment would be futile does not involve 'an evaluation of the underlying merits of the case.'"  *Kolb v. ACRA Control, Ltd.*, No. CIV. PWG-12-2782, 2014 WL 2048049, *3 (D. Md. May 16, 2014) (citing *MTB Servs., Inv., v. Tuckman-Barbee Constr. Co.*, No. CIV. RDB-12-2109, 2013 WL 1819944, *3 (D. Md. Apr. 30, 2013)).  Rather, the merits are only relevant to a Court's ruling on a motion for leave to amend "if a proposed amendment may clearly be seen to be futile."  *Davis*, 615 F. 2d at 613.

Finally, in examining the District Court's interpretation of Maryland law governing conversion and the Baltimore County Code addressing the disposition of property affected by a tenant eviction, this Court must conduct a *de novo* review.  *Salve Regina College, supra.*

### B. THE DISTRICT COURT ABUSED ITS DISCRETION BY FINDING HALL'S FHA RETALIATION CLAIM IN HER PROPOSED AMENDED COMPLAINT TO BE FUTILE.

To establish a claim for retaliation in violation of the FHA under 42 U.S.C. §3617 ("§3617"), a plaintiff must establish that "(1) the plaintiff was engaged in a protected activity; (2) the defendant was aware of that activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action."  *Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402, 442 (E.D. Va. 2011) (citing *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)), *rev'd on other grounds*, 468 Fed. Appx. 283 (4th Cir.

2012). Courts view § 3617 as a broad prohibition on a variety of conduct that could constitute coercion, threats, intimidation, or interference with a plaintiff's rights under the FHA. *See Smith v. Housing Authority of South Bend*, 867 F. Supp. 2d 1004, 1016 (N.D. Ind. 2012). ("Section 3617 provides an independent post-acquisition discrimination claim that is more broadly prohibitive of conduct."); *see also People Helpers, Inc. v. City of Richmond*, 789 F. Supp. 725, 731 (E.D. Va. 1992) ("The Fair Housing Act is 'broad and inclusive' in protecting against conduct which interferes with fair housing rights and is subject to 'generous construction.'") (citing *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 209-12 (1972)).

In this case, Greystar "coerced, intimidated, threatened or interfered" with Hall's exercise of her rights under the FHA as contemplated by the broad prohibition in § 3617. The destruction of a tenant's property is prohibited by and is actionable pursuant to § 3617. *See Johns v. Stillwell*, No. 3:07-CV-00063, 2009 WL 1408517, at *11 (W.D. Va. 2009) (holding that a reasonable juror could determine that the defendant's "entry upon and taking possession of the property . . . and then discarding and burning Plaintiffs' property, indicates coercion, intimidation, threat or interference prohibited by § 3617").

In the District Court's Memorandum Opinion denying Hall's Motion to Alter/Amend and for Leave to File an Amended Complaint, the District Court

acknowledged that the critical facts alleged in Hall's proposed Amended Complaint changed the analysis with respect to Hall's FHA retaliation claim, most notably on the issue of whether the Defendants took any adverse action against Hall. *See* J.A. at 260. Looking to its prior ruling granting Defendants' Motions to Dismiss, the Court previously found that Greystar "did not take any adverse action against [Hall] because all removed property was deemed abandoned." *Id*. at 263.[2] In a striking departure from its earlier ruling, the District Court then found that Hall's "new complaint now alleges that [Greystar] also removed property from in and around [Hall's] car, property that had not been abandoned. The complaint raises sufficient facts to survive a motion to dismiss on the third prong [adverse action]." *Id*.

However, the District Court ultimately denied Hall's Motion to Alter/Amend and for Leave to File an Amended Complaint, reasoning that she failed to satisfy the fourth prong of an FHA retaliation claim, which requires alleging a causal connection between her protected activity and the adverse action. *See id*. at 264.

---

[2] Appellant does not waive the contention that the District Court misinterpreted the Baltimore County eviction code in its initial ruling in this case. In fact, as discussed more fully *infra*, the law is self-contradictory, at one point identifying property removed from a tenant's apartment as "abandoned," yet directing the landlord to have that property placed at a location proximate to the apartment. The District Court utterly ignored this contradiction, as well as the Appellees' clear violation of the obligation to keep Appellant's property in close proximity when it concluded that all property leaving the Appellant's apartment was "abandoned" for purposes of Maryland conversion law, and that consequently under the FHA no "adverse action" took place.

Notably, the District Court stated that the Amended Complaint failed to allege that Greystar's "actions were taken *because of* [Hall's] protected status or *because of* [Hall's] prior HUD complaint," and that "[a]bsent factual allegations that could give rise to a plausible finding of discriminatory intent, the Court cannot assume that [Greystar] has acted unlawfully under § 3617." *Id*. at 265.  Hall asserts that she "ought to be afforded an opportunity to test [her] claim on the merits" because her proposed Amended Complaint sufficiently states a cause of action for retaliation in violation of the FHA.  *Davis*, 615 F.2d at 613.  Thus, it was clear error to dismiss the Complaint on a 12(b)(6) motion.

On the fourth element of an FHA retaliation claim, the District Court overlooked the fundamental concept that, as one federal court observed, "it appears self-evident that a party cannot innocently and unintentionally coerce, intimidate, threaten, or interfere with a person's enjoyment of the rights protected by [the FHA]." *Alley v. Les Chateaux Condo. Ass'n, Inc.*, 8:10-CV-760-T-33TGW, 2010 WL 4739508, *5 (M.D. Fla. Nov. 16, 2010) (internal citations omitted).  In fact, when a plaintiff alleges that the defendants knew of her disability and presents facts demonstrating that defendants' actions were "at least *plausibly connected* to [plaintiff's] disability," then such allegations "give rise to a *reasonable inference* of discriminatory intent."  *Smith*, 867 F. Supp. 2d, at 1018  (emphasis added)

14

(internal citations omitted). Hall has done just that in her proposed Amended Complaint.

Additionally, it has already been settled by the United States Supreme Court that a plaintiff need not plead a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in order to survive a motion to dismiss for failure to state a claim in a discrimination lawsuit. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 515 (2002) (reasoning that "*McDonnell Douglass* . . . is an evidentiary standard, not a pleading requirement"); *see also Fletcher v. Tidewater Builders Ass'n Inc*., 216 F.R.D. 584, 589-90 (E.D. Va. 2003) (recognizing that *Swierkiewicz* resolved a Circuit split on the issue and holding that a plaintiff must merely comply with the requirements of Fed. R. Civ. P. 8(a), which "establishes a pleading standard without regard to whether a claim will succeed on the merits[]"). With respect to FHA claims specifically, for which the *McDonnell-Douglas* standard clearly applies, *McDonnell-Douglas* is viewed as an evidentiary standard and, as such "is not a proper measure of whether a complaint fails to state a claim." *Ring v. First Interstate Mortg., Inc.*, 984 F. 2d 924, 926 (8th Cir. 1993) (holding that a plaintiff does not have to prove an FHA claim in the complaint; rather all that is required is to give the defendants fair notice of the claim and the grounds upon which it rests).

Despite the intra-circuit debate in the Fourth Circuit on the issue of whether *McDonnell-Douglas* is a pleading requirement or merely an evidentiary standard, the Fourth Circuit has more recently leaned towards the controlling *Swierkiewicz* decision of the United States Supreme Court.[3]   In fact, this Circuit has most recently held that a plaintiff need not plead all the elements of a *prima facie* case under *McDonnell Douglas* in order to survive a motion to dismiss, but must simply state a plausible claim for relief as required by Fed. R. Civ. P. 8(a).  *See Miller v. Carolinas Healthcare Sys.*, 561 Fed. Appx. 239, 241 (4th Cir. 2014); *see also Craddock v. Lincoln Nat. Life Ins. Co.*, 533 Fed. Appx. 333, 335-36 (4th Cir. 2013) (holding that the *McDonnell Douglas* test is an evidentiary standard under the pretext framework, not a pleading requirement); *see also Bala v. Commonwealth of Virginia Dept. of Conservation and Recreation*, 532 Fed. Appx. 332, 334 (4th Cir. 2013) ("In the employment discrimination context, however, a plaintiff need not establish a prima facie case under *McDonnell Douglas* in order to survive a motion to dismiss.").   This Court has previously explained that "[u]nder this relaxed

---

[3]     Various District Courts within this Circuit have departed from the principles enunciated in *Swierkiewicz* by following this Court's prior holding in *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), that "[o]ur circuit has not . . . interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim." *See Cockerham ex rel. Cockerham v. Stokes County Bd. of Educ.*, 302 F. Supp. 2d 495-96 (M.D.N.C 2004) (ultimately following *Bass*, but acknowledging the breadth of authority in this Circuit following *Swierkiewicz*) ; *see also Signal v. Gonzales*, 430 F. Supp. 2d 528 (D.S.C. 2006).

standard [of Rule 8], unmeritorious claims and attempts at surprise are eliminated not by motions to dismiss, but rather primarily through 'liberal discovery rules and summary judgment motions.'" *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005) (citing *Swierkiewicz,* 534 U.S. at 512–13) (distinguishing the requirement to allege the elements of a cause of action from establishing a *prima facie* case).

With clear knowledge of Hall's disability, Greystar's intentional conduct which was clearly in response to her disability-related claims raises a reasonable inference that Appellees harbored discriminatory animus, as reflected in the unlawful, unreasonable, and cruel manner in which they removed and ultimately destroyed her personal property. *See Smith*, 867 F. Supp. 2d at 1018-19; *see also Johns*, 2009 WL 1408517, at *11; *see also Cooke v. Town of Colorado City, Ariz.*, 934 F. Supp. 2d 1097, 1114 (D. Ariz. 2013); *Bloch v. Frischholz*, 587 F.3d 771, 786-87 (7th Cir. 2009); *Sackman v. Balfour Beatty Communities, LLC*, No. CIV. 113-066, 2014 WL 4415938, *10 (S.D. Ga. Sept. 8, 2014).  Notably, courts most often address the issue of "discriminatory intent" on summary judgment after the parties have conducted discovery, instead of disposing of the allegations on a motion to dismiss. *See Johns, Cooke, Bloch, and Sackman, supra*.

Certainly, the mere telling of the story in the "fact" section of the Complaint – that Hall, with a long history of pursuing disability rights claims against Greystar

and its predecessors, was prepared to move her personal effects into a nearby storage pod, only to have Greystar (aided by Appellee Kelly of the Baltimore County Sheriff's Office and PSN Landscaping, which provided the vehicles) remove the property and destroy it in a landfill in another state – quite graphically conveys a causal connection between Hall's protected activity under the FHA and the destruction of property representing her entire professional life.

In *Smith*, as in the instant case, the defendant argued that the plaintiffs failed to sufficiently allege a causal connection between their claim of disability discrimination and the actions taken by defendants. *See Smith*, 867 F. Supp. 2d at 1018. The Court disagreed, finding sufficient plaintiffs' allegations that the defendant knew of their disability, that they complained about the illegal conditions of the property which would affect their disability and present barriers to their disability, and that defendants failed to remedy the complained of problems and finding that these allegations were at least plausibly connected to their disability. *See id.* at 1018-19.

Similarly, in *People Helpers Foundation, Inc. v. City of Richmond*, 781 F. Supp. 1132 (E.D. Va. 1992), the court rejected a contention by the defendants, who had engaged in initimidatory tactics against minority families in order to drive them out of the neighborhood, that "the Complaint does not suggest any facts that show the [defendants'] actions were motivated by animus towards disabled

18

people."  781 F. Supp. at 1133.  In denying a Rule 12(b)(6) motion, the Court

observed that the FHA:

> is "broad and inclusive" in protecting against conduct which
> interferes with fair housing rights and is subject to "generous
> construction." *Trafficante v. Metropolitan Life Insurance Co.*,
> 409 U.S. 205, 209 (1972).  . . . [I]t is clear that this provision
> "protects persons who aid encourage others in securing rights to
> equal housing opportunities and conditions by making it
> unlawful to coerce, intimidate, threaten or interfere with them
> because of their aid or encouragement." *Meadows v. Edgewood
> Management Corp.*, 432 F. Supp. 334, 335 (W.D. Va. 1977);
> *see also, Smith v. Stechel*, 510 F.2d 1152, 1164 (9th Cir. 1975)
> (holding that § 3617 deals with situations where housing rights
> actually have been respected by persons who suffer consequent
> retaliation and with situations in which the fundamental
> inequity of a discriminatory housing practice is compounded by
> coercion, intimidation, threat, or interference).

781 F. Supp. at 1134.  The necessary element of "discrimination intent," the Court

concluded in *People Helpers*, "may also be able to be proven at trial." 781 F. Supp.

at 1135.

Turning to the allegations raised in Hall's proposed Amended Complaint,

they are sufficient to make her FHA retaliation claim at least *plausible* in light of

the pleading standard under Fed. R. Civ. P. 8(a).  Thus the District Court erred in

denying her leave to file a proposed Amended Complaint because it is plainly not

futile.  Hall's Amended Complaint clearly alleges that Greystar had knowledge of

her disability.  *See* J.A. at 210.  She also alleged that Greystar engaged in a pattern

of conduct against her due to her disability, including:

19

- Refusing her access to a storage unit where she kept materials necessary for the maintenance of her service dog. *See id*. at 209.

- Removing and destroying her property in the storage unit. *See id*.

- Refusing to rent her an otherwise available three-bedroom apartment after filing a HUD complaint. *See id*. at 210.

- During the eviction and despite an agreement to take her property to a nearby storage unit, removing her purse, computers, passport and file boxes from in and around her car (returning all but the file boxes) and taking her personal property from around her car and apartment to an out-of-state landfill where approximately five-thousand pounds of her personal property was destroyed and approximately ten-thousand pounds of her personal property remains unaccounted for. *See id*. at 212-15.

The combination of Hall's allegations of constant abuse, mistreatment, and disregard for the proper and lawful procedure with respect to the handling of her personal property is enough circumstantial evidence to give rise to a reasonable inference of discriminatory animus on the basis of her well known disability status.

### C. THE DISTRICT COURT ERRED BY DISMISSING HALL'S CONVERSION CLAIM IN HER PROPOSED AMENDED COMPLAINT.

In the District Court's Memorandum Opinion denying Hall's Motion to Alter/Amend Judgment and for Leave to File an Amended Complaint, the District Court decided to retain supplemental jurisdiction over Hall's state law claims and ultimately held that her claim for conversion fails because the entire contents of the bag from in and around her car were returned to her and because she failed to include a plausible claim for damages as to the file boxes also removed from her car. *See* J.A. at 265-66. Earlier in the same opinion, the District Court found that

20

the property in and around Hall's car was not abandoned property. *See id*. at 263.

Additionally, in the District Court's Memorandum Opinion granting Defendants'

Motions to Dismiss, it relied upon the principle of abandonment stemming from its

own interpretation of the Baltimore County Code § 35-3-103, in concluding that

"because the property at issue here was deemed abandoned . . . it was not subject to

conversion." *Id.* at 191.  The District Court abused its discretion by finding Hall's

conversion claim futile for failure to include a plausible damages claim.

Additionally, as argued at length in Section VI. D. *infra*, the Court erred in its

interpretation of a uniquely local provision, which significantly influences the

Court's treatment of Hall's claims.  To find, on one hand, that Hall's property was

not abandoned, and on the other, that her claim for conversion in her proposed

Amended Complaint was still futile, was plain error, if not an abuse of discretion

by the District Court.

Under Maryland law, the common law tort of conversion only contains two

elements:

> First, the plaintiff must prove the defendant exerted any
> distinct ownership or dominion . . . over the personal
> property of another in denial of his right or inconsistent
> with it . . . Second, the defendant must have an intent to
> exercise dominion or control over the goods which is in
> fact inconsistent with the plaintiff's rights.

*Potomac Conference Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, No. CIV.A. DKC 13-1128, 2014 WL 856653, *9 (D. Md. Mar. 4, 2014) (internal citations omitted) (citing *Darcars Motors of Silver Spring, Inc. v. Borzym,* 379 Md. 249, 261-62, 841 A.2d 828 (2004)); *see also Travel Comm., Inc. v. Pan Am. World Airways, Inc.*, 91 Md. App. 123, 183, 603 A.2d 1301, 1331 (1992). "The intent required is not necessarily a matter of conscious wrongdoing." *Keys v. Chrysler Credit Corp.,* 303 Md. 397, 414, 494 A.2d 200 (1985). Rather, "[t]he defendant may have the requisite intent even though he or she acted in good faith and lacked any consciousness of wrongdoing, as long as there was an intent to exert control over the property." *Darcars*, 379 Md. at 262, 841 A.2d at 836. "At a minimum, a defendant liable for conversion must have 'an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'" *Id*. (citing *Keys,* 303 Md. at 414, 494 A.2d at 208). The measure of damages in an action for conversion of personal property is the fair market value of the property at the time of conversion in addition to legal interest up to the date of the verdict. *See Keys,* 303 Md. at 414, 494 A.2d at 209; *see also Checkpoint Foreign Car Serv., Inc. v. Sweeney*, 250 Md. 251, 253, 242 A.2d 148, 149 (1968) (holding that the court below properly submitted the issues of damages to the jury to determine the amount of loss).

The District Court's finding that Hall's conversion claim was futile because she failed to claim quantifiable damages for the removal of the file boxes is plain error, if not abuse of discretion. Specifically, the District Court's justification that Hall failed to specifically calculate and identify a dollar amount of damages for the file boxes treats Hall's damages as a mere loss of cardboard, loose-leaf paper, and office supplies. That is far from the case. The documents Appellees removed and destroyed contained Appellant's entire personal and professional life, including her very identity. The untold damages may well exceed millions of dollars, but only discovery – aided by expert witnesses – can properly establish what the jury will be expected to award once this case is properly tried on its merits.

Maryland courts recognize that when a plaintiff in a conversion action claims damages for the loss of the item converted, oftentimes the value of the property alone does not adequately compensate the plaintiff for such loss. *See Kaplan v. Bach*, 36 Md. App. 152, 160, 373 A.2d 71, 77 (1977) ("We are mindful that there may be extraordinary circumstances when the loss to the litigant is greater than the value of the property at the time of conversion if it has been shown that such loss is not speculative or conjectural.") (citing *Weishaar v. Canestrale*, 241 Md. 676, 684-85, 217 A.2d 525, 530-31 (1966)); *see also Staub v. Staub*, 37 Md. App. 141, 145-46, 376 A.2d 1129, 1133 (1977) ("As in other tort actions, additional damages adequate to compensate an owner for other injurious

23

consequences which result in a loss greater than the diminished or market value of

the chattel at the time of the trespass or conversion may be allowed unless such

claimed damages are so speculative as to create a danger of injustice to the

opposite party.").  In *Weishaar*, the Court of Appeals of Maryland borrowed the

reasoning of the Third Circuit Court of Appeals on this issue:

> The rule is well established that the measure of damages
> for the conversion or destruction of a chattel is the
> market value of the chattel at the time and place of the
> conversion or destruction . . . The justification for it is
> that this provides a convenient rule of thumb and, in case
> the article is readily replaceable on the open market,
> compensates the owner for his loss. The difficulty comes
> when this convenient rule of thumb is sought to be
> applied to every case regardless of the circumstances.
> This the defendant would have us do here and cites
> authorities which have taken this ironclad view of the
> matter. [Citing cases.] The fear of allowing speculative
> damages has scared some courts into applying what Mr.
> Justice Christiancy years ago called the certainty of
> injustice. [Allison v. Chandler, 1863, 11 Mich. 542, 555.]
> 'The general principle which should govern the matter is
> quite clear. Damages are supposed to compensate the
> injured person for the wrong which has been done him.
> [Restatement, Torts, § 910.] If his loss is greater than the
> market value of the chattel at the time of its destruction,
> an owner should, on principle, be allowed additional
> items which will adequately compensate him unless some
> of those claimed items are so speculative as to create
> danger of injustice to the defendant.

*Weishaar*, 241 Md. at 684-85, 217 A.2d at 530-31 (1966) (internal citations

omitted) (citing *Guido, et al. v. Hudson Transit Lines*, 178 F.2d 740 (3rd

Cir.1950)).

24

Turning to the instant matter, Hall did not just lose a pile of boxes and papers. Rather, Appellees' unlawful removal and destruction of her property deprived Hall of her ability to conduct her business and most importantly, prevented her from pursuing her State Court action in which she sought Temporary Declaratory Relief, Temporary and Permanent Injunctive Relief, and which resulted in a Stipulation of Dismissal with Prejudice as a result of her inability to pursue her claims due to Appellees' destruction of supporting documents along with her other personal property. Hall's claim of damages in her proposed Amended Complaint does not simply itemize the cost of boxes, papers, files and folders. Rather, if she was permitted to advance her case towards discovery and beyond, she would be able to prove, beyond speculation, her damages as a result of the loss of her valuable property as a result of Appellees' misconduct.

Regardless, the proper measure of damages is not to be decided on a motion to dismiss; rather, it is more appropriately decided at a later stage of the proceeding. *See Checkpoint*, 250 Md. at 253-54, 242 A.2d at 149 (recognizing that "the measure of damages is the fair market value of the property at the time of the conversion, with legal interest running to the date of the verdict" and further explaining that "[a]nyone familiar with the condition of the chattel, including its owner, is competent to testify as to its value."). In any event, Hall did allege damages for the property she alleges was converted by Defendants. *See* J.A. at

217; *see also Bohle v. Thompson*, 78 Md. App. 614, 628, 554 A.2d 818, 825 (1989) (finding that damages were contemplated in the Complaint "as shown by the request in the complaint, that the court assess damages against the defendant, both compensatory and punative [sic] . . . Further, the complaint contains a general prayer for such other and further relief as the nature of this case may require.") (internal citations omitted); *but see Stirling v. Garritee*, 18 Md. 468, 470-71 (1862) ("the plaintiff alleges a conversion, for which he would be entitled to recover the worth of the things converted; and he asks damages, not for *that*, but for a *detention* of the property.  The effect is the same as if he had asked no damages at all – a vice which is clearly not cured by verdict.").

In light of the District Court's findings and the allegations in her proposed Amended Complaint, Hall's conversion claim would survive dismissal.  In *Potomac Conference Corp.*, the Plaintiffs simply alleged that the Defendants "continue to use and refuse to return Plaintiff's database with alumni information." 2014 WL 856653, at *9.  The Court found that based on these allegations, Plaintiff "states a plausible conversion claim" and denied the defendants' motion to dismiss that claim.  *Id.*  Similarly, in her proposed Amended Complaint, Hall alleged that

- "Defendants intended to take her property and did in fact take [her] property on December 1, 2011."  J.A. at 216.

- "Defendants did not have [her] permission to take her property to a landfill or any other location other than the location she specified." *Id.*

- "Pursuant to Baltimore County Code Section 35-3-103, Ms. Hall was entitled to have her property placed on Greystar's property or at a location as near as possible to the Premises pursuant to Ms. Hall's arrangements to have it transported to the location she specified." *Id.* at 217.

- "The Defendants' act of transporting Ms. Hall's property to a landfill resulted in the destruction of that property." *Id.*

- "Ms. Hall repeatedly informed the Defendants that she wished to retain possession of her property. The Defendants' wanton disregard for Ms. Hall's wishes constitutes actual malice towards Ms. Hall. *Id.*

Considering that the District Court already found that a portion of Hall's property was not abandoned, and that all of Hall's property was arguably not abandoned pursuant to the Baltimore County Code, *see infra* Section VI. D., Hall's allegations of Conversion are not futile because they would survive a motion to dismiss.

### D. THE DISTRICT COURT ABUSED ITS DISCRETION BY REFUSING TO CERTIFY THE QUESTION OF THE PROPER INTERPRETATION OF THE BALTIMORE COUNTY CODE SECTION 35-3-103.

The propriety of dismissal of Hall's Conversion claim and Article 26 claim in this case turns heavily on the proper interpretation of Baltimore County Code § 35-3-103. That provision states, in relevant part, that "[p]roperty removed from the leased premises in accordance with a properly issued warrant of restitution shall be considered abandoned[,]" and further that "[a] designated authority executing a warrant of restitution shall place the property of the tenant that has been removed from the leased premises: (i) on the landlord's property . . . [or] in a

place as near as possible to the leased premises." Baltimore County Code § 35-3-103. Hall disputes that her property was abandoned by operation of this provision because she contends that the initial removal itself and subsequent destruction of her property was improper and thus constituted conversion. Additionally, under the Baltimore County Code, Ms. Hall was clearly entitled to have her property placed on Greystar's property or at a location as near as possible to the premises. The provision itself is internally inconsistent because it provides for the placement of a tenant's property on or near the premises, and then declares that same property abandoned, without clarifying at what point the property is considered abandoned. *See id*. The District Court abused its discretion in interpreting this complex and uniquely local provision.

In Maryland, "[t]he Court of Appeals of this State may answer a question of law certified to it by a court of the United States or by an appellate court of another state or of a tribe, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State." Md. Code Ann., Cts. & Jud. Proc. § 12-603. It is appropriate for this court to certify a question of state law to the state's highest tribunal "when [we are] required to address a novel issue of local law which is determinative in the case before [us]." *Grattan v. Bd. of Sch. Commissioners of Baltimore City,* 805 F.2d 1160, 1164 (4th Cir.1986) (citing

*Lehman Bros. v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974)). A district court's refusal to certify a question of state law is reviewed for abuse of discretion. *See Antonio v. SSA Sec., Inc.*, 749 F.3d 227, 234 (4th Cir. 2014); *see also Copier by & through Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998) ("We review the district court's decision not to certify the question of state law for abuse of discretion."). Even if a reviewing court finds no abuse of discretion, the Court of Appeals may certify the question to the Court of Appeals of Maryland *sua sponte*. *See Anderson v. United States,* 669 F.3d 161 (4th Cir. 2012).

Generally, federal circuit courts of appeals will find that the District Court abused its discretion or will on their own direct a question to be certified when there is no clear controlling and precedential state law to resolve a novel and unsettled question of state or local law. *See IFCO Sys. N. Am., Inc. v. Am. Home Assur. Co.*, 502 F. App'x 342, 346 (4th Cir. 2013) (directing a question to be certified to the Supreme Court of Georgia when there was no clear controlling precedent from Georgia appellate decisions on the particular issue in the case); *see also Pittman v. Cole*, 267 F.3d 1269, 1289 (11th Cir. 2001) ("The United States Supreme Court repeatedly has recognized that federal courts have discretion to certify '[n]ovel, unsettled questions of state law' to a state's highest court for resolution.") (citing *Arizonans for Official English v. Arizona,* 520 U.S. 43, 79

(1997)); *see also First Am. Title Ins. Co. v. W. Sur. Co.*, 447 F. App'x 437, 444 (4th Cir. 2011) *certified question answered*, 283 Va. 389, 722 S.E.2d 637 (2012) (certifying questions when "[the court] find[s] no clear controlling Virginia precedent to guide our decision" on the interpretation of a statute); *see also Anderson*, 669 F.3d at 171 *certified question answered*, 427 Md. 99, 46 A.3d 426 (2012) ("[I]t does not appear that the Maryland cases have resolved definitively [the proper interpretation of a state statute]. The lack of definitive guidance necessitates certification of this question."); *Sims v. Carrington Mortgage Servs., L.L.C.*, 538 F. App'x 537, 539 (5th Cir. 2013), *certified question accepted* (Aug. 23, 2013), *certified question answered sub nom. reh'g denied* (Oct. 3, 2014) *Sims v. Carrington Mortgage Servs., L.L.C.*, 440 S.W.3d 10 (Tex. 2014) ("Because the remaining issues in this case raise important and determinative questions of Texas law as to which there are no controlling Supreme Court of Texas precedents, we certify those unresolved questions to the Supreme Court of Texas.").

More specifically, federal courts tasked with interpreting *state or local statutes* often certify a question to a state's highest court to make such determinations. *See Antonio*, 749 F. 3d at 234. In deciding whether or not to certify a question requiring state or local statutory interpretation, the Court will "first consider whether the provision's meaning 'may be determinative of an issue in pending litigation.'" *Id.* (citing Md.Code Ann., Cts. & Jud. Proc. § 12–603).

30

Next, the Court will attempt to interpret a statute based on any controlling appellate decisions, constitutional provisions, or statutes. *See id.* Then the Court will look to the plain meaning of the statute, and if that is ambiguous or unclear, in order to "discern legislative intent, [the court] look[s] to the legislative history, prior case law, the purposes upon which the statutory framework was based, and the statute as a whole." *Id.* (citing *Bost v. State,* 406 Md. 341, 958 A.2d 356, 361 (2008)). Finally, under Maryland law, "it is a longstanding rule of statutory interpretation that the common law will not be repealed by implication." *Id.* at 237 (citing *Suter v. Stuckey,* 402 Md. 211, 935 A.2d 731, 743 (2007). "The rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language." *Suter*, 402 Md. at 232, 935 A.2d at 744 (quoting *Lutz v. State,* 167 Md. 12, 172 A. 354, 356 (1934)) (internal quotation marks omitted). In order for state laws to abrogate the common law, "it must clearly appear that they are repugnant to the act, or the part thereof invoked, that their survival would in effect deprive it of its efficacy and render its provisions nugatory." *Id.*

Hall has made it clear throughout the District Court litigation in this case that the proper interpretation of Baltimore County Code Section 35-3-103 is critical to the outcome of her case. *See* J.A. at 130 (arguing that a plain reading of the statute suggests that property is only considered abandoned *once removed* in

accordance with a properly issued warrant of restitution and that the *initial removal and subsequent destruction* of Hall's property constituted conversion); *see id.* at 152 (requesting a hearing on Hall's Responses in Oppositions to the Motions to Dismiss filed by Defendants because the parties disputed the proper interpretation of the Baltimore County Code provision and due to the novelty and complexity of the issue and the dearth of legal authority interpreting the provision).  Instead of certifying the question of its interpretation to the Maryland Court of Appeals, the District Court took the liberty of interpreting the Baltimore County Code on its own without further argument from the parties or a stance on the County Code from the State's highest court.  The District Court stated that the "statutory language of section 35-3-103 is clear" that "by operation of this provision, Plaintiff's property therefore became abandoned property once PSN employees carried it out the front door of her apartment," and that "the Court does not read these provisions as affording the evicted tenant any rights."  *Id.* at 185-86, 189. However, the Court failed to properly analyze the statute in light of the specific issues raised and facts alleged in Hall's proposed Amended Complaint, namely the illegality of the removal of the property itself, the issue of whether Hall's property was abandoned, and if so, at what point it was considered abandoned.  It is plain that the statute entitles Hall to have her property placed on Greystar's property or at a location as near as possible to the premises instead of being placed directly on

to trucks destined for a landfill. *See* Baltimore County Code § 35-3-103. The District Court's failure to properly and adequately address the Baltimore County Code and failure to certify a question to the Maryland Court of Appeals for interpretation constitutes plain error, if not an abuse of discretion.

## VII. CONCLUSION.

For the reasons stated herein, this Court should find that the District Court abused its discretion by denying Hall's Motion to Alter/Amend and for Leave to File an Amended Complaint and dismissing Hall's underlying case, and remand the case to the District Court so Hall may be allowed proceed to discovery to try her case on the merits. Should this Court deem interpretation of Baltimore County's eviction code dispositive of Hall's claims, it may review the District Court's errornroues interpretation *de novo* or refer the issue to the Maryland courts for disposition. Accordingly, we respectfully urge this Court to REVERSE the District Court and to remand the case for further proceedings.

Respectfully Submitted,
/s/ Leslie R. Stellman
LESLIE R. STELLMAN
ADAM E. KONSTAS
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road
Towson, MD 21204
(410) 938-8800
lstellman@pklaw.com
akonstas@pklaw.com
*Counsel for Appellant*

33

**REQUEST FOR ORAL ARGUMENT**

Appellant, L. Hall, respectfully request oral argument on the issue raised in this appeal.

**CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS**

TO BE INCLUDED IMMEDIATELY BEFORE THE CERTIFICATE OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT.

1.      This Brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

X       Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman, NOT sans serif typeface such as Arial).  Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, CG Times, 14 point):

_____

☐       Twelve point, monospaced typeface (Such as Courier or Courier New). Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, Courier, 12 point):

_____

2.      EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statues, rules, or regulations; any certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

☐       _____ Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

X       8,272 Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

☐       _____ Lines of Monospaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court's striking of the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

/s/ Leslie R. Stellman
LESLIE R. STELLMAN
ADAM E. KONSTAS
PESSIN KATZ LAW, P.A.

# United States Court of Appeals
# for the Fourth Circuit

*L. Hall v. Greystar Management Services*, No. 14-2145

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by PESSIN KATZ LAW, P.A., Attorneys for Appellants to print this document.  I am an employee of Counsel Press.

On **December 29, 2014**, Counsel for Appellants has authorized me to electronically file the foregoing **Brief for Plaintiff-Appellant** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

MICHELLE MARIE MCGEOGH
MICHAEL W. SKOJEC
BALLARD SPAHR, LLP
300 East Lombard Street, 18th Floor
Baltimore, MD 21202-3268
(410) 528-5661
mcgeoghm@ballardspahr.com
skojecm@ballardspahr.com
*Counsel for Appellee Greystar Management Services, L.P.*

ANDREW M. BATTISTA
409 Washington Avenue, Suite 600
Towson, MD 21204
(410) 296-6824
abattistalaw@gmail.com
*Counsel for Appellee PSN Landscaping Company, Incorporated*

MICHELE J. MCDONALD
Assistant Attorney General
OFFICE OF THE ATTORNEY
GENERAL OF MARYLAND
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6576
mmcdonald@oag.state.md.us
*Counsel for Appellee Richard Kelly*

Additional a paper copy will be mailed to the above counsel on this date.

Unless otherwise noted, 8 paper copies have been filed with the Court on the same date via U.S. Express Mail.

December 29, 2014                                   /s/ Robyn Cocho
                                                   Counsel Press